IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | | |
|---|---|---|
| Allen C. Sullivan, | ) | Civil Action No. 6:17-3477-TMC-KFM |
| Plaintiff, | ) | |
| | ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. | ) | |
| | ) | |
| Rudco South, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

       This matter is before the court on the defendant's motion for summary judgment (doc. 24). The plaintiff, who is proceeding *pro se*, alleges that the defendant, his former employer, discriminated against him based upon his race in violation of Title VII of the Civil Rights Act of 1964, as amended (doc. 1 at 5). Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Civil Rule 73.02(B)(2)(g) (D.S.C.), all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

       The defendant filed its motion for summary judgment on May 18, 2018 (doc. 24). On that same date, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment procedure and the possible consequences if he failed to respond adequately (doc. 25). The plaintiff filed his response in opposition to the motion on June 4, 2018 (doc. 27), and the defendant filed a reply on June 11, 2018 (doc. 29).

## FACTS PRESENTED

       The defendant is a company that manufactures environmental, recycling, and waste handling equipment (doc. 24-2, Rudolph aff. ¶ 1). The plaintiff, who is a black male, was employed by the defendant as a line welder from June 24, 2016, until January 18, 2017 (*id.* ¶ 2 & ex. 2; doc. 1 at 5). According to the affidavit of Mark Rudolph, the defendant's president, during an approximately four-month period, the plaintiff was disciplined five

separate times for getting into altercations with different coworkers (doc. 24-2, Rudolph aff. ¶ 2).  Rudolph states in his affidavit that the plaintiff was warned to stop the conduct on September 8, 9, 14, and 26, 2016, and January 17, 2017; each coworker involved was also written up and warned they could have no more arguments; and none of the coworkers who were disciplined repeated the offense except the plaintiff, who continued to get into altercations (*id.* ¶¶ 2-3).  Rudolph further states that the plaintiff argued and verbally attacked his coworkers when he asked them for help or they asked him for help (*id.* ¶ 3). He states that supervisors discovered that in each instance the plaintiff accused each coworker of being a racist, but that none of the employees with whom he got into altercations ever said anything about the plaintiff's race (*id.* ¶ 4).  Rudolph states in his affidavit that the defendant attempted to place the plaintiff in different work areas with different coworkers, but it did not resolve the issue (*id.* ¶ 3).

Rudolph submitted the plaintiff's personnel records as an attachment to his affidavit (*id.* ¶ 6 & ex. 2).  Those records consist of the plaintiff's personnel disciplinary action forms showing verbal warnings on September 8, 9, and 14, 2016 (*id.*, ex. 2).  The records also contain a written warning given to the plaintiff on September 26, 2016, which states, "Not getting along with employees in every area we've put him" (*id.*).  The document is signed by a supervisor and states that the plaintiff refused to sign the warning (*id.*).  The records also contain a discharge notice dated January 18, 2017, which states, "Not getting along with fellow employees and a verbal confrontation in shop then it carried to the parking lot" (*id.*).  The notice further states, "Terminate employment this is the 5th warning and or write up" (*id.*).  It states that the plaintiff refused to sign the notice (*id.*).

In response to the motion for summary judgment, the plaintiff states that the defendant's "statement . . . is not true," and he has "only been to the office" on September 26, 2016, when a white coworker, Doug, told supervisors that he could not work with the plaintiff because he was black (doc. 27 at 1, 3-4).  He claims that he was called to the office and written up, but he refused to sign the form because he "didn't do anything to nobody" (*id.* at 4).  He further states "the only time [he] went to the office" was on January 18, 2017,

when he was told that he had been written up five times and was fired (*id.* at 1).  He claims that he was told that he was being terminated from employment because he was about to fight a coworker in the parking lot, but the plaintiff claims that he was not about to fight anyone (*id.* at 2).

The plaintiff also states that he went to the office to complain about a coworker on August 6, 2016, when the coworker stated that he did not want to work with black people (*id.* at 3).  He claims that he was told that "that's the way these white guys are in the welding shop" (*id.*).  The plaintiff also states that on January 6, 2017, a black coworker, James, came to his work station to discuss problems he was having with white coworkers (*id.* at 4). A supervisor saw on a camera that James was at the plaintiff's work station for 10 to 15 minutes, and the supervisor called the plaintiff into the office and wrote him up (*id.* at 4-5). He further states that on January 17, 2017, he asked a new, white coworker to take some parts to a scrap bin, and the coworker replied, "I'm not your slave" (*id.* at 5).  The plaintiff went to the office to complain, and he was told to get his stuff and go home for the day because he was "not going along with the program" (*id.*).  The plaintiff states that the next day, January 18, 2017, he was called into the office and terminated from employment because none of his white coworkers wanted to work with him (*id.* at 6).

The plaintiff filed a charge of discrimination with the South Carolina Human Affairs Commission ("SCHAC") on February 13, 2017 (doc. 24-3).  In the charge, he stated that the defendant discriminated and retaliated against him because of his race between August 6, 2016, and January 18, 2017 (*id.*).  The plaintiff also filed a charge with the SCHAC on February 22, 2017, alleging that the discrimination took place between September 26, 2016, and January 18, 2017 (doc. 27-1 at 1).  The SCHAC issued a finding of "no cause" in a notice of right to sue on September 7, 2017 (doc. 24-4).  The plaintiff filed his complaint in this action on December 27, 2017 (docs. 1, 11).

## APPLICABLE LAW AND ANALYSIS

### *Summary Judgment Standard*

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

While the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the

4

court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

### *Burden-Shifting Framework*

"A plaintiff asserting a claim of unlawful employment discrimination may proceed through two avenues of proof." *Addison v. CMH Homes, Inc.*, 47 F. Supp. 3d 404, 416 (D.S.C. 2014). First, a plaintiff may establish his claims through direct evidence of the alleged discrimination. *Id.* (citation omitted). "Such proof includes 'evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision.'" *Id.* at 416-17 (quoting *Fuller v. Phipps*, 67 F.3d 1137, 1142 (4th Cir.1995)). "Absent direct evidence of intentional discrimination, Title VII . . . claims are analyzed under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 793 (1973)." *Shun-Lung Chao v. Int'l Bus. Machs. Corp.*, 424 F. App'x 259, 260 (4th Cir. 2011) (citation omitted).

If the plaintiff can establish a *prima facie* case, the burden then shifts to the defendant to produce a legitimate, nondiscriminatory reason for its actions against the plaintiff. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253-55 (1981) (this is a burden of production, not persuasion). If the defendant meets this burden, the plaintiff must show by a preponderance of the evidence that the proffered reason was a pretext for discrimination. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000). "[A] plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* at 148. However, "if the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision, or if the plaintiff create[s] only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred," summary judgment is appropriate. *Id.* Accordingly, the court must evaluate "the strength of the plaintiff's *prima facie* case, the probative value of the proof that the employer's

explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." *Id.* at 148-49. "Notwithstanding the intricacies of proof schemes, the core of every [discrimination] case remains the same, necessitating resolution of the ultimate question of . . . whether the plaintiff was the victim of intentional discrimination." *Merritt v. Old Dominion Freight*, 601 F.3d 289, 294-95 (4th Cir. 2010) (citations omitted).

### *Hostile Work Environment*

To prevail on a hostile work environment claim, the plaintiff must show: (1) he was subjected to unwelcome harassment; (2) the harassment was based on his race; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability to the employer. *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 313–14 (4th Cir. 2008). Here, the plaintiff's hostile work environment claim fails because he cannot establish that the alleged harassment was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive atmosphere. The plaintiff must show that the severity or pervasiveness of any purported harassment was not just offensive to him, but was objectively abusive as measured by a reasonable person. *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)). To determine if there was an objectively hostile environment, courts consider "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

As argued by the defendant, the conduct alleged by the plaintiff falls short of meeting the "severe or pervasive" element. Actionable harassment occurs "'when the workplace is permeated with discriminatory intimidation, ridicule, and insult . . . .'" *Id.* (quoting *Harris*, 510 U.S. at 21). Title VII is not a "general civility code." *Oncale*, 523 U.S. at 80. "Workplaces are not always harmonious locales, and even incidents that would

objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard." *Sunbelt Rentals, Inc.*, 521 F.3d at 315. "Complaints based on nothing more than rude treatment by coworkers, callous behavior by one's superiors, or a routine difference of opinion and personality conflict with one's supervisor are not actionable under Title VII." *Id.* at 315-16 (internal citations and quotations omitted).

Viewing the evidence in a light most favorable to the plaintiff, the following race-based comments were made during his employment: on August 6, 2016, a white coworker named Nate said he did not want to work with black people and that he would rather work with white people; on September 26, 2016, a white coworker named Doug told supervisors that he did not want to work with the plaintiff because he was black; and on September 17, 2017, a new white coworker responded, "I'm not your slave, you don't tell me what to do, I tell you what to do," when the plaintiff asked him to take parts to the scrap bin (doc. 27 at 3-5).

The Fourth Circuit has reiterated the long-standing principle that "'simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.'" *Sunbelt Rentals, Inc.*, 521 F. 3d at 315 (citation and internal quotation omitted). As noted above, courts must consider the frequency and severity of the alleged discriminatory conduct; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. Here, a reasonable jury could not conclude that the alleged comments by the plaintiff's coworkers over a period of several months was sufficiently severe or pervasive to rise to the level of a hostile work environment. Accordingly, summary judgment should be granted on this claim.

### *Disparate Treatment*

The plaintiff also contends that he was treated disparately based upon his race (doc. 1 at 5). Specifically, the plaintiff alleges that he was fired because he is black and would not "go along with the program" (*id.*). Disparate treatment cases present "the most

easily understood type of discrimination" and occur where an employer has "treated [a] particular person less favorably than others because of" a protected trait. *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009) (citations omitted). A disparate treatment plaintiff must establish "that the defendant had a discriminatory intent or motive" for taking a job-related action. *Id*. To establish a *prima facie* case of discrimination in the enforcement of employee disciplinary measures under Title VII, the plaintiff must show: (1) that he is a member of a class protected by Title VII, (2) that the prohibited conduct in which he engaged was comparable in seriousness to misconduct of employees outside the protected class, and (3) that the disciplinary measures enforced against him were more severe than those enforced against those other employees. *Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir. 1993) (citation omitted).

Here, the defendant has presented evidence by affidavit and personnel disciplinary action forms showing that the plaintiff received at least three verbal warnings and one written warning prior to his termination from employment (doc. 24-2, Rudolph aff. & ex. 2). The plaintiff has not offered any evidence of similarly situated employees outside his protected class who received multiple warnings and were treated more favorably. Notably, the defendant's president testified in his affidavit that every one of the coworkers with whom the plaintiff argued was also written up, but none of the coworkers received another writeup for the same conduct again after the altercation with the plaintiff (*id.* ¶ 3). The plaintiff has presented no evidence of any coworker having multiple writeups who was not terminated from employment.

In his response to the motion for summary judgment, the plaintiff disputes the defendant's documents showing that he received verbal warnings on September 8, 9, and 14, 2016 (doc. 27 at 1). Rather, he states that he "went to the office" only once (*id.*). Nonetheless, the plaintiff goes on to admit that he went to the office four times prior to his termination from employment: on August 6, 2016; September 26, 2016; January 6, 2017; and January 17, 2017 (*id.* at 3-6). The plaintiff also contends that he received "no verbal OR written warning" prior to his termination from employment (*id.* at 1). However, he also

admits in the same memorandum that he received a written warning on September 26, 2016, which he refused to sign, and that he was written up on January 6, 2017 (*id.* at 3-5). Thus, while the plaintiff disputes the defendant's evidence, by his own admission he received at least two warnings prior to his termination from employment (*id.* at 1-6). Viewing the evidence in a light most favorable to the plaintiff, he has not shown evidence of any employee outside his protected class who engaged in conduct of comparable seriousness who received less severe discipline. As argued by the defendant, the plaintiff has offered no more than conclusory allegations in support of his claims. "[C]onclusory allegations of racism cannot reasonably support the conclusion that [the plaintiff's] discharge was motivated by racial animus." *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 281 (4th Cir. 2000).

Although the plaintiff does not meet his burden of proving a *prima facie* case of discrimination, even if he did, the defendant has a legitimate, nondiscriminatory reason for terminating the plaintiff's employment: his continued disputes with coworkers despite the defendant's efforts to place him in different areas with different coworkers. The plaintiff has not shown that the reason articulated by the defendant was a pretext for unlawful discrimination. "[A] plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate nondiscriminatory reasons for an adverse employment action." *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 456 (4th Cir. 1989) (citation omitted).

The plaintiff also repeats the allegation made in an attachment to his complaint (doc. 11) that on one occasion the defendant "had overtime at work and they asked all the white coworkers do they want to work overtime and didn't ask any of the black coworkers" (doc. 27 at 4). To survive the motion for summary judgment, a plaintiff may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Celotex,* 477 U.S. at 324. The plaintiff has presented no evidence in support of this claim and relies only on his own conclusory allegations.

Based upon the foregoing, summary judgment should be granted to the defendant on the plaintiff's disparate treatment claim.

### *Retaliation*

The defendant reads the plaintiff's complaint to allege claims for disparate treatment and hostile work environment based upon his race (doc. 24-1 at 5). However, liberally construing the *pro se* plaintiff's complaint, as this court must, it appears that the plaintiff may also have alleged a claim for retaliation in violation of Title VII (*see* doc. 1 at 5).

To state a *prima facie* case of retaliation under Title VII, the plaintiff must prove:   (1) he engaged in a protected activity; (2)   the defendant took an adverse employment action against him; and (3)  there is causal link between the two events. *Boyer-Liberto*, 786 F.3d at 271 (citation omitted). "To prove a causal connection, a plaintiff asserting a retaliation claim must be able to show that [his] employer took the adverse action '*because* the plaintiff engaged in a protected activity.'" *Addison v. CMH Homes, Inc.*, 47 F. Supp. 3d 404, 427 (D.S.C. 2014) (emphasis in original) (quoting *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007)).

To the extent the plaintiff has alleged a Title VII retaliation claim, such claim fails for the same reasons argued by the defendant as to the other Title VII claims. Specifically, assuming for purposes of this motion that the plaintiff can establish a *prima facie* case of retaliation, he has presented insufficient evidence to show that the defendant's proffered reason for his termination from employment was a pretext for retaliation. Accordingly, the undersigned recommends that summary judgment also be granted on the retaliation claim.

### *Damages*

The plaintiff claims damages in the amount of $185,000, which he alleges is comprised in part of "denial of unemployment benefits, cost of living expenses, medication, and etc." (doc. 1 at 5). Title VII does not permit recovery for such damages. 42 U.S.C. § 2000e-5(g)(1), (k). Accordingly, even if the district court finds that the plaintiff's allegations survive summary judgment, his claim for denial of unemployment benefits, cost of living expenses, and medications should be stricken and summarily dismissed because Title VII does not provide for recovery for these damages.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the defendant's motion for summary judgment (doc. 24) should be granted.

IT IS SO RECOMMENDED.

s/ Kevin F. McDonald
United States Magistrate Judge

August 24, 2018
Greenville, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
300 East Washington Street
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).